UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                          CRIMINAL NO. 07-410 (MJD/JSM)

     Plaintiff,

v.                                                 <u>REPORT AND RECOMMENDATION</u>

NEDRICK RICHARDO MILLER

     Defendant.

     JANIE S. MAYERON, United States Magistrate Judge

     The above matter came on for hearing before the undersigned upon defendant's Pretrial Motion to Suppress Statements [Docket No. 12]; and defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 13].

     Assistant United States Leshia Lee-Dixon appeared on behalf of the Government; Reynaldo A. Aligada, Assistant Federal Public Defender, Esq. appeared on behalf of defendant Nedrick Richardo Miller, who was personally present.  The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

     Based upon the pleadings, the pre-hearing submissions, exhibits submitted at the hearing, and testimony taken from Trooper Douglas Rauenhorst it is recommended that:

     1.    Defendant's Pretrial Motion to Suppress Statements [Docket No. 12] be **DENIED**.

2.     Defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 13] be **DENIED**.

## I.     FACTUAL BACKGROUND

### A.     <u>Stop of Vehicle Defendant was Driving</u>

Trooper Douglas Rauenhorst, with the Minnesota State Highway Patrol, testified at the suppression hearing that on October 9, 2007, at approximately 5:00 p.m., he was monitoring traffic on Interstate 94.  During his patrol, a white Lexus came to his attention because it moving faster than the surrounding traffic.  Trooper Rauenhorst was not able to get a reliable radar reading of the Lexus given that the signal was bouncing off of multiple vehicles in its vicinity.  However, the radar did indicate that vehicles in the area were traveling between 70 and 72 miles per hour.[1]  In addition to the car's speed, Trooper Rauenhorst noticed that something was hanging from the rear view mirror of the Lexus in violation of Minnesota traffic laws.  Trooper Rauenhorst pulled behind the Lexus, and then activated his emergency lights, which also activated the video recording device in his squad car.  The Lexus pulled over and Trooper Rauenhorst observed two male occupants inside the car.

Trooper Rauenhorst approached the vehicle to speak with the driver, defendant Miller.  Trooper Rauenhorst informed defendant that he was stopping him because of the suspended object in the rear view mirror and advised him of the speed he was traveling.  Defendant provided Trooper Rauenhorst with his license, insurance and the registration for the vehicle.  Trooper Rauenhorst observed a red rectangular air

---

[1]     The speed limit in this area was 70 miles per hour.

freshener hanging from the rear view mirror, a Nextel phone next to defendant's hand, and that the car was clean.

A license check on defendant's Illinois driver's license revealed that it had been suspended in Illinois.  A review of defendant's insurance policy indicated that it was an open-ended policy that did not apply to just one vehicle.  Trooper Rauenhorst asked defendant about his suspended driver's license and about the registration of the vehicle. Defendant stated that the vehicle belonged to his girlfriend.

Given that defendant did not have a valid driver's license and in order to avoid a chase, Trooper Rauenhorst placed defendant into the back of the squad car to write up a citation.  While he was writing up the citation, Trooper Rauenhorst asked defendant for his address and where he was going. According to Trooper Rauenhorst, these are standard questions which are asked when the owner of the vehicle is not present to determine if the car was stolen.  Defendant stated that he had gone from St. Paul to Chicago and back to St. Paul.  Trooper Rauenhorst testified that no Miranda warning had been given to defendant prior to this statement.

Trooper Rauenhorst also spoke with the passenger, who was still in the Lexus. The passenger stated that his driver's license was not valid.  The records check on the passenger revealed that he had a suspended Minnesota driver's license.

Trooper Rauenhorst then issued a traffic citation to defendant for not having a valid driver's license and a warning for the suspended item hanging from the rear view mirror of the vehicle.  See Government Ex. 2.

B.    **Search of the White Lexus**

Given that neither the driver nor the passenger of the Lexus had a valid driver's license, and the owner of the car could not be ascertained, Trooper Rauenhorst decided to have the vehicle towed per policy.  Pursuant to the General Order of the Minnesota State Patrol, a vehicle can be towed off of a highway if the driver does not have a valid driver's license and there is no qualified driver immediately available who the owner will authorize to drive the vehicle.  See Government Ex. 3, ¶ II(B)(5).  Also, pursuant to this policy, an inventory search of the vehicle can be conducted before it is impounded.  As a general rule, an inventory search does not include looking under the hood of the car.  Minnesota State Patrol Trooper Schneider conducted the inventory search of the Lexus.  No evidence was discovered during the inventory search.

Trooper Rauenhorst testified that after the inventory search was completed, he asked defendant for consent to search the vehicle and to perform a sweep with his canine.  According to Trooper Rauenhorst, defendant looked down to the ground and said, "go ahead."  The consent is not recorded on the audio recording equipment that Trooper Rauenhorst carried on him.[2]

Trooper Rauenhorst asked for consent to search the car because in his experience the following information suggested the occupants were involved in some sort of criminal activity involving drugs: the car was being driven by a third party, and the owner was not present; the occupants had traveled to and from Chicago which is

---

[2]    According to Trooper Rauenhorst, he believed that his microphone was turned on when he obtained consent from defendant but that the recording was fading in and out possibly due to battery issues.

considered a source city for drugs; there was an air freshener hanging from the rear view mirror which is often used to mask odors of drugs; defendant was carrying a blanket insurance policy, which could be used for different cars; there were new tires on the car to prevent a breakdown in travel; and there was a Nextel phone in the car which is often used to communicate in drug deals.

Trooper Rauenhorst stated that once he received consent from defendant to search the car, he proceeded to take his nationally certified narcotics detecting canine partner, Sonia, around the outside of the vehicle.  The canine gave a positive an alert for a drug odor near the passenger door.  The canine was then placed inside of the vehicle, where she made a positive alert on the floor of the passenger side.  There, officers discovered what appeared to be a marijuana stem and seed.  After the alert by the canine, Trooper Schneider lifted up the hood of the vehicle and opened the box containing the vehicle's air cleaner that was located under the hood on the passenger side of the vehicle.  Instead of finding the air cleaner inside the box, Trooper Schneider discovered four baggies inside of the compartment.  Three of the bags contained what appeared to be marijuana, and one bag contained what appeared to be crack cocaine. Trooper Rauenhorst testified that at no time during the search did defendant withdraw his consent to search the car.

II.    **ANALYSIS**

Defendant has challenged the validity search of the Lexus he was driving on October 9, 2007.[3]  Defendant also argued that the statement taken from him by Trooper Rauenhorst regarding his destination should be suppressed, as he had not been advised of his Miranda rights prior to making the statement.

A.    **Validity of the October 9, 2007 Search of the White Lexus**

Defendant did not challenge the voluntariness of his consent to conduct a search of the vehicle.  Instead, defendant argued that the seizure of the drugs under the hood of the Lexus violated his constitutional rights because it was the fruit of an inventory search that was not conducted pursuant to Minnesota State Patrol policy.  According to Trooper Rauenhorst, an inventory search generally does not include looking under the hood of a car.  As it is not clear where the inventory search ended and the consent search began, defendant argues that the Government cannot establish that the search under the hood was the subject of a valid consent.

Trooper Rauenhorst testified that the inventory search took place first, and then was followed by the consent search, which consisted of the canine sweep and the troopers' search of the vehicle.  According to Trooper Rauenhorst, the hood was searched during the consent search.  This Court has reviewed the video recording of

---

[3]     Defendant has not challenged the validity of the October 9, 2007 stop of the vehicle pursuant to a traffic violation for having an object hanging from the rear view mirror.  See United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002) (citations omitted) ("[A] traffic violation – however minor – creates probable cause to stop the driver of a vehicle."); Gerding v. Comm'r of Pub. Safety, 628 N.W.2d 197, 200-01 (Minn. 2001) (concluding driving with an object in the rear view mirror is a traffic offense that supports a stop even if that object does not obstruct the driver's vision).

the October 9, 2007 stop of the Lexus.  See Government Ex. 4.  Consistent with the testimony of Trooper Rauenhorst, this recording shows that the discovery of the drugs under the hood of the vehicle occurred during the consent search of the vehicle

At approximately 17:07 on the video recording, another trooper (Trooper Schneider) asked Trooper Rauenhorst if he wanted him to conduct an inventory search. See Government Ex. 4.  Trooper Schneider is then seen conducting the inventory search.  At 17:33, the luggage in the trunk was taken out.  At no time in between 17:07 to 17:33 were either troopers seen looking under the hood of the vehicle.  No other search of the vehicle is seen until approximately 17:36, when Trooper Rauenhorst was videotaped using his canine to search the vehicle.  At approximately 17:37-38 the canine appears to make a positive alert in the passenger compartment.  The officers searched that area and then checked the rest of the vehicle.  At 17:42-43 Schneider checked under the hood and discovered several baggies.

Based on the review of the videotape, this Court concludes that the inventory portion of the search took place between 17:07 to 17:33 and there was no search under the hood.  Only at 17:36 did Trooper Rauenhorst use his canine to search the car, which he testified was the first part of the consent search, and the discovery of the drugs under the hood came after that at 17:42-43.  In other words, the evidence before the Court supports Trooper Rauenhorst's undisputed testimony that the drugs were discovered during the search pursuant to defendant's consent.

A warrantless search does not violate the Fourth Amendment when law enforcement officers obtain voluntary consent from the individual whose property is

searched or from a third party with common authority over the property.  Illinois v.
Rodriguez, 497 U.S. 177, 181 (1990).  As stated previously, defendant did not challenge
the voluntariness of defendant's consent to conduct a search of the vehicle.  Defendant
did intimate in his questioning of Trooper Rauenhorst, however, that the troopers
exceeded the scope of the consent because they did not ask him specifically if they
could look under the hood.

　　　　The scope of a consensual search is measured by what "the typical reasonable
person [would] have understood by the exchange between the officer and the suspect."
Florida v. Jimeno, 500 U.S. 248, 251 (1991); see also United States v. Ferrer-Montoya,
483 F.3d 565, 568 (8th Cir. 2007).  "The scope of a search is generally defined by its
expressed object."  Jimeno, 500 U.S. at 251.  Given this standard, the Eighth Circuit has
concluded that an "officer may reasonably interpret a suspect's unqualified consent to
search a vehicle for drugs to include consent to, inter alia: 'search containers within that
car which might bear drugs,'; probe underneath the vehicle; and open compartments
that appear to be false, or puncture such compartments in a minimally intrusive
manner."  Ferrer-Montoya, 483 F.3d at 568 (internal citations omitted).

　　　　In the present case, defendant placed no qualifications or limitations upon his
consent to Trooper Rauenhorst's search of the vehicle.  Lifting up the lid of the air
cleaner compartment under the hood of the car is no more intrusive than looking
underneath a vehicle or puncturing a compartment of the vehicle.  Moreover, there is no
evidence in the record demonstrating that defendant objected to or suggested that he
wished to withdraw his consent to the search of the vehicle when the trooper opened

8

the hood. See Ferrer-Montoya, 483 F.3d at 568 (concluding that the fact that the defendant did not object or withdraw his general consent when a particular search was being conducted, supported a finding that the specific search was with the general consent given). Therefore, for all the above reasons, this Court does not find that the search under the hood exceed the scope of the consent given to search the Lexus.

In summary, given that contraband seized from the vehicle was obtained by virtue of a lawful stop and search, this Court recommends that defendant's motion to suppress the evidence seized from the vehicle be denied.

**B.   Statement Made by Defendant**

Defendant has sought to suppress the statement he made in the patrol car that he had traveled from Saint Paul to Chicago and back to Saint Paul in a short period of time. There is no dispute that this statement was made before defendant's Miranda rights were given to him by law enforcement officers. In analyzing whether this statement should be suppressed based on the Fifth Amendment, this Court must first determine whether defendant was (1) in custody, and (2) being interrogated. See United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (finding the protections afforded by Miranda are only triggered when an individual "is both in custody and being interrogated") (citation omitted).

A private citizen is not normally entitled to be read his Miranda rights prior to being asked questions during a routine traffic stop by police, as this sort of questioning does not constitute a custodial interrogation. See Berkemer v. McCarty, 468 U.S. 420, 440 (1984). In finding that the questioning of a private citizen pursuant to a routine

traffic stop does not constitute a "custodial interrogation" for purposes of Miranda, the Supreme Court in Berkemer reasoned that warning a detainee of his constitutional rights is not necessary given that in most traffic stops, the detainee is only kept by police for a short period of time and because stops usually occur in public. Id. at 437-38. The Court noted that "[a] motorist's expectations, when he sees a policeman light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way." Id. at 437 (emphasis added). The relevant inquiry is "how a reasonable [person] in the suspect's position would have understood [the situation]." Id. at 442.

In this case, the fact that defendant was seated in the trooper's squad car when he was asked about his destination, alone, does not automatically place him "in custody" for purposes of Miranda. See United States v. Murray, 89 F.3d 459, 462 (7th Cir. 1996) ("[T]he fact that Murray was questioned while seated in the back of the squad car did not put him 'in custody' for purposes of Miranda warnings.") (citation omitted); United States v. McKinney, 88 F.3d 551, 554 (8th Cir. 1996), overruled on other grounds by United States v. LeBrun, 363 F.3d 715 (8th Cir. 2004) (suspect not "in custody" when he was questioned for brief period in backseat of sheriff's car outside his home); see generally, Oregon v. Mathiason, 429 U.S. 492, 495 (1977) ("Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house. . . .").

10

When looking at the totality of the circumstances, this Court finds that a reasonable person in defendant's position would have understood that he was going to be issued a traffic citation and released at the time he made a statement about his destination.  First, while in the squad car, Trooper Rauenhorst told defendant that he was being issued a citation for not having a proper driver's license defendant.  See Government Ex. 4.  Defendant then asked Trooper Rauenhorst if he was being taken to jail, to which Trooper Rauenhorst replied "no."  Trooper Rauenhorst then told defendant that he was merely issuing him a citation and that defendant should just take care of it.  Further, defendant inquired how the Lexus could be retrieved out of the impound lot and Trooper Rauenhorst tried to get him the necessary information.

Although defendant may have been in patrol car at the time he made the statement about his destination, he was stopped on a public highway, told that he was being given a traffic ticket and that he was not going to jail, and was given information on how to get the Lexus out of the impound lot, thereby supporting a finding that defendant would have believed that his detention would be temporary and brief.  Given these circumstances, this Court concludes that defendant was not in custody for purposes of Miranda and that the limited questioning by Trooper Rauenhorst to alleviate his suspicions regarding the ownership of the vehicle, did not require a Miranda warning.  See United States v. Martin, 411 F.3d 998, 1002-03 (8th Cir. 2005) (although the defendant was asked multiple questions regarding whether there were any drugs in the car during a traffic stop for having an non-functioning brake light, the court concluded that the defendant was not in custody, since the defendant was never

11

informed his detention would be anything but temporary and he was asked only a modest number of questions relating to the presence of drugs).

For all the reasons stated above, defendant's motion to suppress statements should be denied.

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein,

**IT IS RECOMMENDED THAT:**

1.      Defendant's Pretrial Motion to Suppress Statements [Docket No. 12] be **DENIED**.

2.      Defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 13] be **DENIED**.

Dated:        December 27, 2007

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 7, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs fled under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **January 7, 2008**.